v. Secretary of the Department of the Navy. Thank you. Thank you. All right, we'll hear first from Mr. Thomas. Good morning. May it please the Court, my name is Archibald Thomas. I represent the appellant in this case, Jose Rosado. The case involves a claim of discrimination based on race and age by Mr. Rosado, who is employed by the federal government as an IT specialist for the Navy in a command called NAVFAC. I don't mean to interrupt, and you can use your time however you wish, but we are all pretty familiar with the facts of the case, so if you wish to proceed to the argument, feel free to do so. Thank you, Your Honor. The case involves two issues, discrimination in the traditional sense, and retaliation, which, of course, is a form of discrimination. The district court granted summary judgment on both counts. The discrimination part of the case, after the BAB decisions, involves the issue of how do you prove discrimination in view of BAB I and BAB II. The district court basically accepted a handful of unpublished 11th Circuit opinions. It basically said what you do now is you look at the McDonnell-Douglas paradigm, but you only use the first step, the prima facie case step. You don't look at the other two because we're not talking about the ultimate employment decision. We're only talking about the process itself. I mean, I will tell you, it seems to me that there are three, whatever, there are a few different ways you can show it because all you need to do is show that the decision was in some way tainted by discriminatory reasons. And so you could do it, as we said and we found in Buckley, where there was evidence in the record that at least created an issue of fact about whether discrimination might be involved. It's almost, it's a little bit like the mosaic, convincing mosaic theory, except that it doesn't have to be quite as strong as it has to be for convincing mosaic because you just have to show taint. You don't have to show that it was a but-for cause of the decision. I think, you know, in Buckley we said we're not requiring plaintiffs to establish the McDonnell-Douglas framework because it's requiring a plaintiff to have to move a stone when the statutory language only requires moving a pebble. But I think that's another way you could do it, right? You don't have to do it that way. You could do it in one of the ways that I've just mentioned, but you could do it that way by doing the whole framework, I guess, right, to show that there was some kind of discrimination that factored in in some way. But I think you do, at least at some point, have to show that discrimination at least tainted the decision-making process. And so this is, I'm sorry I've taken a lot of your time. We'll give you an extra minute. This is a long way of sort of asking, what specific things can you point to in the record to show that discrimination tainted the decisions here? Well, as most of these cases are, this is a circumstantial evidence case. And so what we're looking for are things with regard to discrimination that are unusual or out of the ordinary, false statements. Even though after Bab I and Bab II, you never get to the pretext stage of McDonnell-Douglas, that is still relevant evidence from which you can point to. So just because your time is limited, but I guess I'm interested in an answer to Judge Rosenbaum's question. She has channeled my thinking about this case precisely. In Buckley, right, but you know, in Buckley, we didn't require the plaintiff there to put on any comparators. But Buckley had some stuff, right? Some conduct, behavior, some stuff that stunk. So like what's your stinky stuff? I think first you have to recognize the significant difference in a failure to promote case and the other kinds of discrimination involving termination. Because in a failure to promote case, you're not making the same kind of comparison between the applicant and the eventual selectee. Totally agree. And so I think you might not need comparators. Maybe you don't need comparators for a failure to promote case. Maybe you don't need comparators because McDonnell-Douglas doesn't fit a public sector Title VII case at all. Absent comparators, what's your stuff? Well, the comparator is the person that was selected. That is automatically the comparator. But you don't compare the relative qualifications. In a case like this, in a federal government competitive position, there's a process, and it starts with a very comprehensive list of qualifications. I would say the ultimate evidence is that Mr. Rosado was uniquely qualified for all of the positions that he applied for. These are CIO positions. He had been a CIO for seven years. None of the other applicants had that qualification. Most of them came from outside of the federal government. They weren't familiar with CIO, the Command Information Office. And the jobs that he was applying for, basically he was seeking to be upgraded from a GS-11 to a GS-12. He had done all those jobs. He had performed all of those functions. See, I guess my thinking about this case is that if you had to show comparators, speaking for myself, I think you'd probably lose because I think that the people who were hired into these jobs had every bit as good of qualifications, if not better, than Mr. Rosado did. But if you don't have to show comparators, which, frankly, I don't think you do, it can't be your position, though, that just because he was qualified and didn't get the job, there is a reasonable inference of discrimination. Surely, there's got to be something. As Judge Rosenbaum says, even if it's not a convincing mosaic in a public sector case, you've got to show some mosaic, some minimally. You're absolutely right. I'm just saying that that appears to be the most significant issue, is that he is substantially more qualified than the others because of the job that he held and the fact that he did all these jobs that he's applying for. But no, that's not the only evidence. The Navy, it appears, from my understanding of the record, did institute, I guess, a blind screening, though, of applicants, at least for some of the positions, and some of those he made it through the initial screening and some he didn't. So what was discriminatory at all about the process that the Navy instituted which resulted in Mr. Rosado not getting the job because of his race, national origin, and age? You are correct. With regard to the first job that he applied for, they did go through that screening process, and the selecting official was a fellow by the name of Mr. Kohler who was not involved in the other four jobs. The last job, the supervisory job, also went through that same process. You're correct. But the three jobs in the middle did not. They were advertised as if they were going to go through that process, but what the selecting official did, Ms. Freeman, she name-selected two of them, meaning she didn't go through that process where the panel scores the resume, conducts the interviews. And on a prior one, they even gave the interview 60% of the final score. Well, there were no interviews. Those three instances, what, again, I guess to my colleague's question, what evidence do you have that he was discriminated based on his race, national origin, or age? The primary evidence is the unusual procedure, the name selection, which is not typical. The other individual, there were three individuals selected. One of them was name-selected as well, Mr. Ravenscroft, but it was because they were allowed to promote him noncompetitively because he fell into a special category. But she could have done that with Mr. Rosado. He was by far the oldest. He was the only Hispanic out of all of the employees in CIO during Ms. Freeman's tenure. And he was by far the best qualified. And their explanation is false. Their explanation is that we selected the best qualified, and there are components to that. For example, on one of them, they said they're looking for someone with what they call ICS experience. And she had moved the ICS branch from where Mr. Rosado worked in CIO 3 to CIO 4 right after she became the chief information officer. But Mr. Rosado... Your time is limited. Let's say that the retaliation claims that you brought were actually a lot stronger. And the argument that the other side makes is that you've waived almost all of your retaliation arguments except for the temporary promotion. In your brief, you do mention all of the promotions and the statement of issues. But when it comes to the substance of your brief, I do think it reads as if it's only focused on the temporary promotion. Why do you believe you have not waived the other retaliation claims? Because the facts of the discrimination, as alleged in the brief, show the temporal proximity to several of these issues. And particularly, I focus particularly on the one issue involving the temporary promotion because that temporal proximity was virtually within a day of the mediation where Ms. Freeman offered him the promotion if he would drop his other EEO claims. And he said, I'm not dropping those claims because I've already been in this job for two months. And so since it's Ms. Freeman that is involved in all of the other selections, we believe that any evidence of retaliation goes across the board to all of the selections because we're talking about the same person, Ms. Freeman. And Ms. Freeman testified that Mr. Rosado is the only employee in her 30-year history that has ever accused her of being a responsible management official in a discrimination case. And he is the only one of the 29 employees of CIO who has ever filed a charge of discrimination. So we think that that goes across the board for all of them. And in our brief, we concluded by saying that we believe that the retaliation counts in the entire complaint are supported by those facts. Thank you.  We'll hear next from the Navy. Good morning, Your Honors. May it please the Court. Sean Siakinin for the Secretary of the Navy. I had some prepared opening remarks, but I can tell from the Court's line of questioning that the Court's view of certain parts of this case is much different than, frankly, my view of certain parts of this case. And so I'm going to wing it. I'd like to respond to some things that have come up just now. So first, I'd like to talk about the relevant causation standard. My understanding of BAB is that but-for causation is still required. Nope. Whether... No, it's not required. It's only required to obtain relief or a remedy that would go to what was denied. But it's not required for other relief. So... Well, the Supreme Court does say at least one point in the BAB opinion that a plaintiff who is seeking injunctive relief on that lesser showing of differential treatment has to show that the protected characteristic was the but-for cause of that differential treatment. It depends on what the injunctive relief is that they're seeking. If they're seeking to be placed back in the position, then I agree with you. But it's... Under BAB and under our circuit's case law, BAB 2, Buckley, a plaintiff, a federally employed plaintiff, does not have to show that it's but-for causation in order to state a cause of action under Title VII or the ADEA under that free-from-discrimination language because the Supreme Court has clearly said that all they have to do is show that it was in some way tainted by discrimination. They don't have to show but-for causation. That just goes to the remedy that they can receive. Understood, Your Honor. I don't want to spend too much time pushing back on this. I'll just say that my understanding clearly has been much different. Maybe you should reread it. Seriously. Point taken. It's... I mean, I don't mean to be rude or anything, but... No offense taken, Your Honor. There's a two... I mean, there's a two... You know, yes, you're absolutely right that you have to show but-for causation for certain remedies, but just as clearly BAB says you don't have to show but-for causation for other remedies. And we have said the same thing. So, just to let you know. And just so I understand, like, how do you read Buckley? Buckley, you know, notes the fact that in a private sector setting you would need comparators. But Buckley, as a public sector case, clearly doesn't require comparators. Does a convincing mosaic-ish kind of thing, as Judge Rosenbaum has described. Now, in Buckley, I think it's a little different from this case because in Buckley there was some stuff. I just don't frankly see any stuff here. Well, that's the other point that I wanted to turn to. In the ten or twelve minutes that my opposing colleague was talking, I didn't hear any malfeasance or stinky stuff. The only real factual dispute that I understood him to point to was what he referred to as the unusual procedure by which he thinks the second and third positions were filled. These were the second IT specialist position and the non-competitive promotion. And I don't think there's anything unusual or suspicious in the record. I think all of this was explained in numerous EEO affidavits and in declarations that we provided. And none of those explanations are contradicted or undermined in any way by any other evidence in the record. Well, the record does show that he's the only Hispanic in his department area. It doesn't appear that any Hispanics, therefore, have been promoted. Is that not enough in terms of just the demographics and the fact that he's isolated already and then there's this glass ceiling that he can't break? And then I do believe at least one of the individuals hired or promoted was much younger than he was. That is true. But not enough, and I guess your argument is not enough. Well, whether or not this court thinks that a similarly situated comparator is strictly necessary in this case, then I would fall back to the more general point that this is the sort of alleged discrimination that I think is inherently and necessarily comparative. This isn't a case where an applicant applied for a promotion or a position, didn't get it, and then was left with no possible comparator because the position went unfilled. For each of these positions, except with the possible exception of the noncompetitive promotion, Mr. Rosado was considered and was considered against numerous other applicants. And so I think for a reasonable jury to rationally conclude that he had been discriminated or retaliated against because of any of those protected characteristics, I think that there would need to be something more in the record, at a minimum something to refute or contradict the Navy's facially legitimate, consistent explanations for how and why each of these positions was filled. And those explanations were that in each case they were looking for very specific, very current experience with very particular technologies, which Mr. Rosado just did not have recent experience with simply by virtue of the fact that for the previous seven years he had been very narrowly focused on telecommunications, not on servers. And each of the positions at issue in this case involved networking system administration for servers in entirely different groups or sections within this division of the Navy. In essence, what Mr. Rosado was looking to get for each of these positions was a transfer to a different area performing a much different type of work. Let's say you're right on the discrimination claim and there's just nothing there, but what about the retaliation? I mean, the timing is that a lot of these promotions became available after he had filed his EEO complaint. And as Mr. Rosado's counsel highlighted, he also identified the bad actor as Ms. Freeman, I believe, who ended up making this broad pronouncement during a meeting where a lot of people attended. Essentially, some could argue attacking Mr. Rosado for exercising his right and filing these EEO complaints. So even putting aside whether or not all of the retaliation claims have been waived, what is your response to that in terms of the timing? My first response would be that I think we should start with what Mr. Rosado himself has admitted in this record about the statement that Ms. Freeman made at that meeting. And she's never disputed making this statement. The statement itself isn't in dispute. Mr. Rosado admits that she made this statement in response to one of Mr. Rosado's colleagues refusing to perform a specific task that he thought was beyond the scope of his assigned duties. That is, shipping something, shipping a product to Cuba, I believe. So there's no dispute that that's what precipitated this, that's why this came up. And there's also, I don't see any dispute in the record about the substance of the statement. The statement itself was not recorded, but Ms. Freeman reiterated it as best she could in her declaration. And I don't understand Mr. Rosado's testimony to dispute the substance of how she describes the statement. And that substance was essentially, look, if any of you have any concerns or doubts about the scope of your jobs, if you think that I'm asking you to do things that are beyond your assigned duties, then by all means, feel free to... It wasn't by all means, it was bring it on, file your complaint. Yes, she did say that, but she did not... I don't read anything in that statement to discourage employees from pursuing those rights. She didn't tell them not to do it. She didn't tell them that they would be punished or face any adverse consequences. As I read that statement, taking it at face value, it seems to be an invitation to raise any issues with the scope of their assigned duties, having nothing to do with age or race or any form of discrimination. It could be an invitation or it could be, I dare you. That's not how I read it, and we're in summary, to be clear, we're in summary judgment here, so we're not weighing evidence, we're not making credibility determinations, but I think the crucial point is that Mr. Rosato himself admitted in his deposition the nature of this statement, that this was something that arose not from a dispute about racial or age discrimination, but about scope of duties and nothing more than that, just whether employees were being asked to perform duties beyond the scope of their assigned position, and taking that as true, I think we must on summary judgment because there's no conflicting evidence in the record, that just doesn't seem to me to have any bearing at all on claims of alleged discrimination or retaliation. And the timing, the fact that these promotions were available after he had filed his EEO complaint against someone who made a comment like that in a public or employment situation, and then he was repeatedly denied the promotions, what's the implication of the timing of all of that? So we address the timing on pages 54 and 55 of our brief, we have a chart sort of laying out the relevant chronology, and for all but one of these five positions, there was not a sufficient temporal proximity between the protected activity and the alleged retaliatory act under this court's case law, we explain why that is on page 55 of our brief. The one position where the alleged retaliatory activity was sufficiently close in time was the, I believe it was the second position, his non-selection for position two. First point on that would be that I do think he has abandoned this claim, I don't read him to argue that that position was retaliated, that that process was retaliatory in his opening brief, but even if this court considers it, there was no evidence that the director who was involved in making that decision, that he himself was aware of Rosado's most recent EEO complaint, and even if the director was, of that complaint I mean, the director testified that he had been aware of a much earlier complaint, but even in that case he was a witness for Mr. Rosado. Mr. Rosado doesn't point to any evidence that the director knew of his most recent complaint, and even if the director knew, I don't see any rational basis to infer that the director who had been on Rosado's side for that first complaint would somehow have retaliated against Rosado for making the second complaint. Just a few other points I'd like to respond to from Mr. Rosado's reply brief. Well, we've talked about that already. We've talked about that. So Mr. Rosado says that the Navy suggests that the lack of comparators for the temporary promotion precludes him from establishing a prima facie case, and that's not what we're saying. I don't think he's precluded. I just think that he has not established either a similarly situated comparator or anyone or any example from which discrimination or retaliation could be inferred. It didn't necessarily have to be the person who was selected from that position, but he hasn't pointed to anyone else. He says that it's unlikely that the command information officer would have been unaware that Rosado was working in the higher-level position for weeks before the mediation conference. This has to do with the quote-unquote temporary promotion. Well, he was not improperly working in that position. The evidence shows that he was detailed to that position, which was all that his supervisor had authority to offer him. Well, my understanding of the record is that he was offered the temporary promotion. It was also offered as part of mediation in the EEOC process, and then once he rejected the offer of the Navy, he was then formally denied the temporary promotion. Is that not the sequence? Not quite. The sequence was that the command information officer asked Mr. Rosado's direct supervisor to sort of feel out whether he would be interested in detailing in this area to gain experience to make himself more competitive for future positions. She did not authorize him to offer a formal promotion with a raise, and he didn't have authority to do that. Nevertheless, it does seem that that's what he thought he was offering Mr. Rosado. Mr. Rosado then started doing that work, but it could not have been a promotion because he didn't have authority under federal law to actually promote him. He didn't have authority to detail him. So he was detailed. He was doing that work, but there was nothing improper about it. And then after he had started doing that work, then shortly before this mediation is when the command information officer, who would have had authority to formally promote him, asked if he would be interested in that, and he said no. He said he wasn't interested in that because he thought that he was already in that position. He wasn't. He was mistaken. He had not been formally promoted into that position, and he could not be paid anymore. His salary had not changed and could not have been changed by virtue of what his direct supervisor had offered him. So he turned down what the command information officer had offered him at that point. That's my understanding of the record. All right. Thank you, Mr. Siakinin. Thank you. And we'll hear again from Mr. Thomas. Thank you, Your Honor. He didn't exactly turn down the offer of the promotion. What he did was he refused to drop his other EEO claims in return for that offer because he did believe that he was already in the position and, in fact, had been working there for two months, which everyone knew. And so I think Your Honor is correct. After he refused to settle his EEO case at that mediation, Ms. Freeman could have gone ahead and sent in the paperwork to get him paid for the work that he was doing, but she didn't do that. And that was immediately after the mediation where he refused to drop his claims in return for her offer to pay him for the work that he had been doing by putting the paperwork through. And with regard to age, not just some of the selectees were substantially younger. They were all substantially younger. Some of them, I believe, as many as 20 years younger. I think the closest in age was nine years. I think more significant, though, is the Navy's characterization of either Mr. Rosado's work experience or his resume. They were specifically looking for people with what they call ICS experience. And they admitted that the two people that were name-selected, Sneed and Joshua, had no ICS experience. That's what they were looking for. If you look at Mr. Rosado's questionnaire in the record that he submitted in response to the job opening, he details a lot of ICS experience. In fact, the context of that questionnaire shows that both Ms. Freeman and the director of CIO3 would have been aware of it because Mr. Rosado said in the questionnaire, I perform those duties every day as part of my job. And during that period of time, during the seven years that he was in that job before these selections were made, ICS was part of CIO3 where Mr. Rosado was located. And then Ms. Freeman transferred it to CIO4, and then she started looking for CIO4 positions, emphasizing ICS experience. Well, Rosado had it, but none of the others did. Rosado also had the certifications required for this job. None of the others did. And so we believe that that is significant. Other evidence that you could either find he has met a prima facie case, that the process was tainted, or under the convincing Mosaic standard that he has established that as well. Thank you, Your Honor. Thank you, Mr. Thomas. All right, our next case today is